1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BECKY JANOVICH,                            No.  2:13-cv-0096 DAD

12               Plaintiff,

13        v.                                    ORDER

14   CAROLYN W. COLVIN, Commissioner
     of Social Security,

15

16               Defendant.

17

18        This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.

20   For the reasons explained below, plaintiff's motion will be granted, defendant's cross-motion will

21   be denied, the decision of the Commissioner of Social Security ("Commissioner") is reversed,

22   and the matter is remanded for further proceedings consistent with this order.

23                            PROCEDURAL BACKGROUND

24        On June 2, 2010, plaintiff filed an application for Disability Insurance Benefits ("DIB")

25   under Title II of the Social Security Act ("the Act") alleging disability beginning on January 1,

26   2006.  (Transcript ("Tr.") at 22, 60-61.)  Plaintiff's application was denied initially and upon

27   reconsideration.  (Id. at 62-65, 71-75.)  Thereafter, plaintiff requested a hearing and a hearing was

28   held before an Administrative Law Judge ("ALJ") on November 29, 2011.  (Id. at 42.)  Plaintiff

                                              1

1  was represented by an attorney and testified at the administrative hearing.  (Id. at 42-43.)  In a

2  decision issued on December 16, 2011, the ALJ found that plaintiff was not disabled.  (Id. at 37.)

3      The ALJ entered the following findings:

4      1.  The claimant meets the insured status requirements of the Social
        Security Act through September 30, 2011.

5

6      2.  The claimant has not engaged in substantial gainful activity
        since January 1, 2006, the alleged onset date (20 CFR 404.1520(b)
        and 20 CFR 404.1571 et seq.).

7

8      3.  The claimant has the following severe impairments:  depression;
        anxiety; alcohol addiction (20 CFR 404.1520(c)).

9      4.  The claimant does not have an impairment or combination of
        impairments that meets or medically equals one of the listed

10     impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
        404.1520(d)).

11

12     5.  After careful consideration of the entire record, I find that, based
        on all of the impairments, including the substance use disorder, the
        claimant has the residual functional capacity to perform a full range

13     of work at all exertional levels but with the following nonexertional
        limitations:  she is limited to jobs involving simple, routine,

14     repetitive tasks with occasional public contact.  She has moderate
        limitation in the ability to understand, remember and carryout

15     detailed instructions or tasks and to complete a normal workday and
        workweek without interruptions from psychologically based

16     symptoms and to perform at a consistent pace without an
        unreasonable number and length of rest periods.  She has moderate

17     limitation in the ability to interact appropriately with the general
        public or customers and in her ability to accept instructions and to

18     respond appropriately to criticism from supervisors.

19     6.  The claimant is unable to perform any past relevant work (20
        CFR 404.1565).

20

21     7.  The claimant was born on July 15, 1950 and was 55 years old,
        which is defined as an individual of advanced age, on the alleged
        disability onset date (20 CFR 404.1563).

22

23     8.  The claimant has at least a high school education and is able to
        communicate in English (20 CFR 404.1564).

24     9.   The claimant's acquired job skills do not transfer to other
        occupations within the residual functional capacity defined above

25     (20 CFR 404.1568).

26     10.  Considering the claimant's age, education, work experience,
        and residual functional capacity based on all of the impairments,

27     including the substance use disorder, there are no jobs that exist in
        significant numbers in the national economy that the claimant can

28     perform (20 CFR 404.1560(c) and 404.1566).

1

2

3

    11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

4

5

6

    12.  If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

7

8

9

    13.  If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  she has no exertional limitations, but is limited to jobs involving simple, routine, repetitive tasks with occasional public contract.

10

11

    14.  If the claimant stopped the substance use, the claimant would continue to be unable to perform past relevant work (20 CFR 404.1565)

12

13

14

    15.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

15

16

17

    16.   If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566).

18

19

20

21

22

    17.  The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 404.1520(g) and 404.1535.  Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

23

(Id. at 24-37.)

24

     On November 20, 2012, the Appeals Council denied plaintiff's request for review of the

25

ALJ's decision.  (Id. at 1-3.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by

26

filing the complaint in this action on January 17, 2013.

27

/////

28

/////

3

1

LEGAL STANDARD

2          "The district court reviews the Commissioner's final decision for substantial evidence,

3    and the Commissioner's decision will be disturbed only if it is not supported by substantial

4    evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).

5    Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

6    support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v.

7    Chater, 108 F.3d 978, 980 (9th Cir. 1997).

8          "[A] reviewing court must consider the entire record as a whole and may not affirm

9    simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin.,

10   466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

11   1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

12   reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari,  298 F.3d

13   1072, 1075 (9th Cir. 2002).

14         A five-step evaluation process is used to determine whether a claimant is disabled. 20

15   C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step

16   process has been summarized as follows:

17
             Step one: Is the claimant engaging in substantial gainful activity?  If
             so, the claimant is found not disabled.  If not, proceed to step two.
18

             Step two: Does the claimant have a "severe" impairment?  If so,
19           proceed to step three.  If not, then a finding of not disabled is
             appropriate.
20

             Step three: Does the claimant's impairment or combination of
21           impairments meet or equal an impairment listed in 20 C.F.R., Pt.
             404, Subpt. P, App. 1?  If so, the claimant is automatically
22           determined disabled.  If not, proceed to step four.

23           Step four: Is the claimant capable of performing his past work?  If
             so, the claimant is not disabled. If not, proceed to step five.
24

             Step five: Does the claimant have the residual functional capacity to
25           perform any other work? If so, the claimant is not disabled.  If not,
             the claimant is disabled.
26

27   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

28   /////

4

1    The claimant bears the burden of proof in the first four steps of the sequential evaluation

2    process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden

3    if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094,

4    1098 (9th Cir. 1999).

5                                              APPLICATION

6         In her pending motion plaintiff argues that the ALJ committed the following four principal

7    errors in finding her not disabled:  (1) the ALJ improperly rejected plaintiff's own subjective

8    testimony; (2) the ALJ's hypothetical question posed to the Vocational Expert was incomplete;

9    (3) the ALJ failed to comply with Social Security Ruling 96-8P; and (4) the ALJ's finding that

10   alcohol was a contributing factor material to the determination of disability was not supported by

11   substantial evidence.  (Pl.'s MSJ (Dkt. No. 16) at 18-36.[1])

12   **I.      Plaintiff's Testimony**

13        Plaintiff first argues that the ALJ improperly rejected plaintiff's own testimony regarding

14   the severity of her subjective symptoms.  (Pl.'s MSJ (Dkt. No. 16) at 28-33.)  The Ninth Circuit

15   has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

16               To determine whether a claimant's testimony regarding subjective
                 pain or symptoms is credible, an ALJ must engage in a two-step
17               analysis.  First, the ALJ must determine whether the claimant has
                 presented objective medical evidence of an underlying impairment
18               which could reasonably be expected to produce the pain or other
                 symptoms alleged.  The claimant, however, need not show that her
19               impairment could reasonably be expected to cause the severity of
                 the symptom she has alleged; she need only show that it could
20               reasonably have caused some degree of the symptom.  Thus, the
                 ALJ may not reject subjective symptom testimony . . . simply
21               because there is no showing that the impairment can reasonably
                 produce the degree of symptom alleged.
22
                 Second, if the claimant meets this first test, and there is no evidence
23               of malingering, the ALJ can reject the claimant's testimony about
                 the severity of her symptoms only by offering specific, clear and
24               convincing reasons for doing so . . . .

25   Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

26   omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain,

27   _____

     [1] Page number citations such as this one are to the page number reflected on the court's CM/ECF
28   system and not to page numbers assigned by the parties.

                                                   5

1   or else disability benefits would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d

2   1104, 1112 (9th Cir. 2012).

3          "The ALJ must specifically identify what testimony is credible and what testimony

4   undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685,

5   693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.

6   1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

7              [claimant's] reputation for truthfulness, inconsistencies either in
            [claimant's] testimony or between [her] testimony and [her]
8           conduct, [claimant's] daily activities, [her] work record, and
            testimony from physicians and third parties concerning the nature,
9           severity, and effect of the symptoms of which [claimant] complains.

10  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting

11  Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is

12  supported by substantial evidence in the record, the court "may not engage in second-guessing."

13  Id.

14         Here, with respect to plaintiff's credibility, the ALJ found that if plaintiff "stopped the

15  substance use," her medically determinable impairments could reasonably be expected to cause

16  the symptoms she alleged, however, her statements concerning the intensity, persistence and

17  limiting effects of those symptoms were not credible to the extent they were inconsistent with the

18  ALJ's own residual functional capacity determination.  (Tr. at 35.)  The ALJ supported this

19  finding by concluding that plaintiff's "activities are not indicative of disability."  (Id.)  In this

20  regard, the ALJ noted that in April of 2009 plaintiff stated that she was going on a cruise and that

21  on several occasions plaintiff stated that she engaged in various activities of daily living, such as

22  preparing meals, performing light housekeeping, shopping, driving, cooking, etc.  (Id.)

23         It is well established, however, that social security claimants need not be "utterly

24  incapacitated to be eligible for benefits."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  See

25  also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044,

26  1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has

27  carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for

28  exercise, does not in any way detract from her credibility as to her overall disability.")  In general,

1    the Commissioner does not consider "activities like taking care of yourself, household tasks,

2    hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful

3    activities.  20 C.F.R. § 404.1572(c).  See also Sloan v. Astrue, No. 11-CV-1439 WQH (JMA),

4    2012 WL 5463686, at *12-13 (S.D. Cal. Aug. 20, 2012) ("It strains reason to understand how the

5    ALJ's fourth proffered reason for finding Plaintiff not credible-that Plaintiff was able to take a

6    cruise with his girlfriend in 2005 with only mild anxiety-weighs against Plaintiff."); Tien Nguyet

7    Tang Huynh v. Astrue, No. CV 10-6448 RNB, 2011 WL 1464835, at *2 (C.D. Cal. Apr. 15,

8    2011) ("Further, the Court concurs with plaintiff that the fact she managed to go on a two-day

9    Mexican cruise also does not constitute a 'clear and convincing' reason for rejecting her

10   subjective symptom testimony.").

11        In support of this finding the ALJ also cited purported "inconsistencies which

12   diminish[ed] the claimant's credibility."  (Tr. at 35.)  In this regard, the ALJ stated that plaintiff

13   told a consultative psychiatrist on November 16, 2010, that she could not drive due to panic

14   attacks but on October 19, 2011 said that she had to sell her car to pay her bills.  (Id.)  Then,

15   according to the ALJ, on November 11, 2011, plaintiff stated she had been convicted of DUI a

16   year and a half earlier.  (Id.)  From this, the ALJ presumed that plaintiff's inability to drive

17   appeared to be "based on either [a] lack of a car or her past arrest," as opposed to her panic

18   attacks.  (Id.)

19        However, when plaintiff met with the consultative psychiatrist on November 16, 2010, she

20   presented a valid driver's license.  (Id. at 215.)  This, there is no apparent inconsistency between

21   plaintiff's statement in November of 2010 that she could not drive due to panic attacks and the

22   later sale of her vehicle or the suspension of her license as a result of her DUI conviction.  That

23   plaintiff suffers panic attacks when she drives, sold her car for money and had her license

24   suspended as the result of a DUI conviction may well all be true.

25        The final reason offered by the ALJ in support of this credibility finding is that on July 8,

26   2010 plaintiff reported that she stopped working at Cost Plus on January 1, 2006 due to her

27   impairments, but on November 16, 2010, stated that she had worked two years earlier at Cost Plus

28   and was unable to continue working there because she had no transportation.  (Id. at 35.)  Then on

7

1   November 11, 2011, plaintiff stated that she stopped working as a medical assistant due to a loss

2   of hours and because she could not drive at night.  (Id. at 35.)

3         The precise inconsistency perceived by the ALJ with respect to these statements, and its

4   importance to the resolution of plaintiff's application, is unclear to the court.[2]  What is clear to the

5   court, however, is that any confusion raised by these statements is far from a clear or convincing

6   reason for rejecting plaintiff's subjective testimony.

7         Accordingly, the court finds that the ALJ's opinion does not offer specific, clear and

8   convincing reasons for rejecting plaintiff's testimony regarding her subjective symptoms and their

9   severity.  Accordingly, plaintiff is entitled to summary judgment in her favor with respect to this

10  claim.

11  **II.      Vocational Expert Hypothetical**

12        Plaintiff also argues that the ALJ failed to properly determine her Residual Functional

13  Capacity ("RFC") and, therefore, failed to pose a legally adequate hypothetical question to the

14  Vocational Expert ("VE").  (Pl.'s MSJ (Dkt. No. 16) at 33.)  Specifically, plaintiff argues that the

15  ALJ's question to the VE failed to including the ALJ's own finding that plaintiff had moderate

16  difficulties in maintaining concentration, persistence or pace, as well as other limitations found by

17  the examining psychologist, whose opinion the ALJ credited.  (Id.)

18        While an ALJ may pose a range of hypothetical questions to a VE based on alternate

19  interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the

20  ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final RFC

21  assessment, must account for all of the limitations and restrictions of the particular claimant.

22  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's

23  hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no

24  evidentiary value to support a finding that the claimant can perform jobs in the national

25  economy."  Id. (citation and quotation marks omitted).  See also Taylor v. Commissioner of

26

27  [2] Plaintiff points out that she sometimes held two jobs simultaneously, that the job she held for
    the longest time was that of medical assistant and that she suffers from decreased memory.  (Pl.'s
28  MSJ (Dkt. No. 16) at 32.)

1    Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor

2    the answer properly set forth all of Taylor's impairments, the vocational expert's testimony

3    cannot constitute substantial evidence to support the ALJ's findings."); Palomares v. Astrue, 887

4    F.Supp.2d 906, 919 (N.D. Cal. 2012) ( "Since the analysis of RFC was flawed and not based on

5    the whole record, the VE's testimony based thereon has no evidentiary value, and the ALJ's

6    finding that Mr. Palomares can perform his previous work is not based on substantial evidence in

7    the whole record."); cf. SSR 83-14 ("Any limitation on these functional abilities must be

8    considered very carefully to determine its impact on the size of the remaining occupational base

9    of a person who is otherwise found functionally capable of light work.").

10          Here, at step 3 of the sequential evaluation, the ALJ found that plaintiff had moderate

11   difficulties in maintaining concentration, persistence or pace.  (Tr. at 32.)  The hypothetical

12   question posed by the ALJ to the VE, however, failed to reference any limitation on the part of

13   plaintiff concerning concentration, persistence or pace.  (Id. at 56-57.)

14          Because the ALJ's hypothetical question to the VE did not reflect all of plaintiff's

15   limitations, the ALJ could not rely on the VE's testimony to make the determination that plaintiff

16   was able to perform jobs that existed in the national economy.  See Bray, 554 F.3d at 1228 ("If an

17   ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony

18   has no evidentiary value to support a finding that the claimant can perform jobs in the national

19   economy."); Werthy v. Astrue, 882 F.Supp.2d 1202, 1235 (D. Or. 2011) ("The ALJ's

20   hypothetical question to the VE, although consistent with the ALJ's RFC assessment, failed to

21   include all of Werthy's limitations and restrictions.  The ALJ therefore could not rely on the VE's

22   testimony to make a determination that Werthy is able to work."); see also Robbins v. Social Sec.

23   Admin., 466 F.3d 880, 886 (9th Cir. 2006) (in posing a hypothetical to VE "an ALJ is not free to

24   disregard properly supported limitations").

25          Defendant argues that the ALJ properly accounted for plaintiff's limitations with respect

26   to concentration, persistent or pace by asking the VE a hypothetical question that presumed that

27   plaintiff was limited to performing simple, routine, repetitive tasks.  (Def.'s MSJ (Dkt. No. 17) at

28   12.)  In support of this assertion, defendant relies on the decision in Stubbs-Danielson v. Astrue,

9

1    539 F.3d 1169 (9th Cir. 2008), in which the Ninth Circuit held that "an ALJ's assessment of a

2    claimant adequately captures restrictions related to concentration, persistence, or pace where the

3    assessment is consistent with restrictions identified in the medical testimony."  Id. at 1174.

4           "The medical testimony in Stubbs-Danielson, however, did not establish any limitations in

5    concentration, persistence, or pace."  Brink v. Commissioner Social Sec. Admin., 343 Fed. Appx.

6    211, 212 (9th Cir. 2009).[3]  Here, in contrast, the ALJ found at step 3 of the sequential evaluation

7    that the medical evidence of record established that plaintiff in fact had moderate difficulties in

8    maintaining concentration, persistence or pace.  (Tr. at 32.)  Accordingly, the decision in Stubbs-

9    Danielson is not controlling here.  See Lubin v. Commissioner of Social Sec. Admin., 507 Fed.

10   Appx. 709, 712, (9th Cir. 2013) (limiting plaintiff to "one to three step tasks" did not capture

11   moderate difficulties in maintain concentration, persistence, or pace)[4]; Brink, 343 Fed. Appx. at

12   212 ("Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does

13   have difficulties with concentration, persistence, or pace.  Stubbs–Danielson, therefore, is

14   inapposite."); Gill v. Colvin, No. CV-13-1573-PHX-BSB, 2014 WL 1950094, at *6 (D. Ariz.

15   May 15, 2014) (finding "the reasoning of Brink is persuasive and supports the conclusion that

16   Stubbs–Danielson is not controlling" where plaintiff had moderate limitations with respect to

17   concentration, persistence and pace); Smith v. Colvin, No. 2:12-cv-1765 EFB, 2014 WL

18   1303651, at *4 (E.D. Cal. Mar. 31, 2014) ("In the present case, the ALJ found that the evidence

19   establishes that plaintiff has moderate difficulties in maintaining social functioning and moderate

20   difficulties in maintaining concentration, persistence and pace.  Accordingly, the ALJ's RFC

21   assessment should have included limitations consistent with this finding."); Juarez v. Colvin, No.

22   CV 13-2506 RNB, 2014 WL 1155408, at *7 (C.D. Cal. Mar. 30, 2014) ("Here, the ALJ expressly

23   found, consistent with the opinion of a state agency review physician, that plaintiff had a

24   moderate limitation in maintaining concentration, persistence, and pace.  Accordingly, under

25   Brink, whose reasoning the Court finds persuasive, the ALJ's RFC determination should have

26   ─────────────────
     [3]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule
27   36-3(b).

28   [4]  See fn. 3, above.

                                                    10

1    included not only the limitation to unskilled work, but also a moderate limitation in maintaining

2    concentration, persistence, and pace.").

3            Accordingly, the court finds that plaintiff is also entitled to summary judgment in her

4    favor with respect to her claim that the ALJ failed to pose a legally adequate hypothetical

5    question to the VE.

6                                        CONCLUSION

7            With error established, the court has the discretion to remand or reverse and award

8    benefits.[5]  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose

9    would be served by further proceedings, or where the record has been fully developed, it is

10   appropriate to exercise this discretion to direct an immediate award of benefits.  See Benecke, 379

11   F.3d at 595-96.  However, where there are outstanding issues that must be resolved before a

12   determination can be made, or it is not clear from the record that the ALJ would be required to

13   find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  Id. at

14   594.

15           Here, this matter should be remanded so that the ALJ can properly consider plaintiff's

16   subjective testimony and pose a proper hypothetical question to a VE, if necessary, to determine

17   plaintiff's residual functional capacity based on all the evidence and, if applicable, determine if

18   plaintiff has the residual functional capacity to perform past relevant work or any work.  In the

19   event the ALJ rejects plaintiff's testimony, the ALJ shall provide a clear and convincing reason

20   for doing so.  Finally, any hypothetical question posed to a VE on remand must account for all of

21   plaintiff's limitations and restrictions.

22           For all the reasons set forth above, IT IS HEREBY ORDERED that:

23                   1. Plaintiff's motion for summary judgment (Dkt. No. 15) is granted;

24                   2. Defendant's cross-motion for summary judgment (Dkt. No. 17) is denied;

25   /////

26   /////

27   _____

28   [5]  In light of the analysis and conclusions set forth above, the court need not address plaintiff's
     remaining claims of error.

                                               11

1          3.  The decision of the Commissioner of Social Security is reversed for the reasons

2   indicated above; and

3          4.  This case is remanded for further proceedings consistent with this order.

4   Dated:  August 29, 2014

5

6   _____
    DALE A. DROZD
7   UNITED STATES MAGISTRATE JUDGE

8   DAD:6
    Ddad1\orders.soc sec\janovich0096.ord.docx
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28